UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| HTC SWEDEN AB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:07-CV-232 |
| ) | (VARLAN/SHIRLEY) |
| V. ) | |
| ) | |
| INNOVATECH PRODUCTS AND ) | |
| EQUIPMENT COMPANY, ) | |
| ) | |
| Defendant and Third-Party Plaintiff, ) | |
| ) | |
| V. ) | |
| ) | |
| HAKAN THYSELL, STEN JEANSSON, ) | |
| JOHN R. ABRAHAMSON, HTC LLC, and ) | |
| HTC INC. ) | |
| ) | |
| Third-Party Defendants. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and the order of the District Court's orders [Doc. 79 and 81] referring, *inter alia*, Innovatech Products and Equipment Company's Motion for Change of Venue [Doc. 41] and Innovatech's Supplemental Motion for Change of Venue (28 U.S.C. § 1404) or Alternative Motion to Dismiss for Lack of Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2)) [Doc. 68], to this Court for disposition and report and recommendation as may be appropriate.

## I. BACKGROUND

Plaintiff HTC Sweden AB ("HTC"), filed the Complaint in this case on June 12, 2007. [Doc. 1]. The Complaint includes allegations of: patent infringement under 35 U.S.C. § 271; infringements of trademarks, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; copyright infringement; unfair and deceptive trade practices under the Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101, *et seq.*, breach of contract, and improper interference with business prospects. [1]

On July 23, 2007, Defendant Innovatech Products and Equipment Company ("Innovatech") filed its Answer [Doc. 10]. In addition to answering the allegations against it, Innovatech's Answer made a number of counterclaims and third-party claims and allegations against the Plaintiff and Third-Party Defendants Hakan Thysell, Sten Jeansson, John R. Abrahamson, HTC LLC, and HTC, Inc., (collectively "the Third-Party Defendants"), including breach of contract, interference with contracts, interference with economic expectation, breach of the duty of good faith and fair dealing, misappropriation of trade secrets, restraint of trade, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68.[2] Innovatech further moves for declaratory judgments against HTC and Third-Party Defendants in relation to a number of intellectual property issues.

On April 10, 2009, Innovatech filed its Motion to Change Venue [Doc. 41]. HTC and the Third-Party Defendants responded in opposition to this Motion on April 27, 2009, [Doc. 43], and Innovatech filed a reply on May 7, 2009, [Doc. 45]. Though not provided for under the Local Rules

---

[1] It appears to the Court that at least one of the torts alleged may not recognized under the law of the State of Tennessee. The Court's inclusion of these torts in its recitation of the facts is not meant to reflect any judgment on the validity of these torts.

[2] See supra n. 1.

of this District, HTC and the Third-Party Defendants made a surreply on May 18, 2009. [See Doc. 47]. This surreply was stricken and re-filed on October 22, 2009, after HTC and the Third-Party Defendants sought leave to file, [Doc. 57].

The parties filed their motions for summary judgment in November 2009, and on November 8, 2009, Innovatech filed a Motion to Stay Summary Judgment Motions and Motion to Compel pending disposition of the Motion for Change of Venue. [Doc. 67]. On November 17, 2009, Innovatech filed another related motion, asking that the Court review a supplemental memorandum in support of Innovatech's pending Motion for Change of Venue or, in the alternative, that the Court allow Innovatech to file the Motion as a motion to dismiss for lack of personal jurisdiction. [Doc. 68].[3] HTC and the Third-Party Defendants replied to this Motion on December 2, 2009. [Doc. 73]. By orders dated December 15, 2009, and January 5, 2009, these motions were referred to the undersigned.

On January 7, 2010, the Court held a hearing to address the venue and jurisdictional issues and related motions. Attorneys Kathleen B. Carr and Andrew L. Colocotronis were present representing HTC and the Third-Party Defendants. Attorneys Gregory A. Dahl, Michael J. Bradford, and Mark S. Graham were present representing Innovatech.

The Court finds the motions identified above and the issues of venue and personal jurisdiction to be fully-briefed and ripe for adjudication.

---

[3]This motion, which was somewhat unclear in the relief sought, was docketed by the Clerk of Court as a Supplemental Motion to Dismiss for Lack of Jurisdiction or for Change of Venue.

## II. ANALYSIS

Innovatech argues both that this Court lacks personal jurisdiction and is not the proper venue for this action. The Court will address Innovatech's personal jurisdiction objections, including its request for dismissal herein, and Innovatech's objections to venue will be addressed by a memorandum and order filed contemporaneously herewith.

In cases addressing patent law along with other claims not based upon federal law, the district court has jurisdiction over those claims which "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367. "Where the personal jurisdictional inquiry is 'intimately involved with the substance of the patent laws,'" the district court must apply the law of the Federal Circuit. Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348 (Fed.Cir. 2003) (quoting Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir.1995)). The claims presented in the instant matter fall within this scope of "intimate involvement," and the personal jurisdiction analysis shall be analyzed under the law of the Federal Circuit. See Electronics for Imaging, 340 F.3d at 1348.

Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: (1) whether a forum state's long-arm statute permits service of process and (2) whether the assertion of jurisdiction would be inconsistent with due process under the United Staes Consitution. Electronics for Imaging, 340 F.3d at 1349 (citing Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir.2001)). In this case, Tennessee's long-arm statute permits service of process to the limits of the due process clauses of the federal Constitution. See Tenn. Code Ann. § 20-2-214. Therefore, the personal jurisdiction analysis in this case narrows to one inquiry: whether jurisdiction comports with due process.

A party's contact with a forum may create "general" or "specific" jurisdiction. General jurisdiction "requires the defendant to have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." Silent Drive, Inc. v. Strong Industries, 326 F.3d 1194, 1200 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). "Specific personal jurisdiction must be based on activities that 'arise[ ] out of' or 'relate [ ] to' the cause of action and can exist even if the defendant's contacts are 'isolated and sporadic.'" Silent Drive, 326 F.3d at 1200 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985)). Innovatech argues that it does not maintain continuous and systematic contacts with Tennessee sufficient to establish general jurisdiction, a point on which HTC and the Third-Party Defendants raise little objection. Instead, the parties briefs and arguments take issue with whether the Court has specific personal jurisdiction over Innovatech.

The Court of Appeals for the Federal Circuit has explained the specific personal jurisdiction standard as follows:

> Under the governing framework of personal jurisdiction, as developed in the Supreme Court jurisprudence, the exercise of jurisdiction over nonresident defendants of a forum state is not inconsistent with due process if the nonresident defendants have certain "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Int'l Shoe v. Washington, 326 U.S. at 316, 66 S.Ct. 154 (quoting Milliken v. Meyer, 311 U.S. 457, 462, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). In general, there must be "some act" by which defendants "purposefully avail[ ]" themselves of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475, 105 S.Ct. 2174. The contacts made by defendants must therefore by their actions create a "substantial connection" to the forum state-where defendants have deliberately "engaged in significant activities within

> a State" or have "created 'continuing obligations' between [themselves] and residents of the forum-and "proximately result from the actions by the defendant[s] themselves," such that it is "presumptively not unreasonable to require [defendants] to submit to the burdens of litigation in that forum as well." Id. at 475-76, 105 S.Ct. 2174.

Electronics for Imaging, 340 F.3d at 1350. While the proponent of the jurisdiction bears the burden to establish minimum contacts, upon this showing, the party opposing jurisdiction must prove that the exercise of jurisdiction is unreasonable. Id.

HTC and the Third-Party Defendants direct the Court to essentially four actions that they contend constitute minimum contacts so as to allow specific jurisdiction. These include: use of a website, assignment of a sales agent to Tennessee, storing of products in Tennessee, and sales of infringing products in Tennessee. [Doc. 57 at 3-4]. As HTC and the Third-Party Defendants note, the Supreme Court of the United States has previously held that a defendant may be found to direct its business to residents of a forum state by indicating an intent or purpose to serve that market. Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 112 (1987). The Court in stating this rule supplied the following as examples of indicating an intent to serve a market: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id. at 112.

While the Court of Appeals for the Federal Circuit has not stated a rule for the weight a website should garner in the analysis of personal jurisdiction, a number of cases from the Court of Appeals indicate that the presence of a website, especially one that is passive, is not a dispositive factor in the personal jurisdiction analysis. See F & G Research, Inc. v. Paten Wireless Tech., Inc.,

6

2007 WL 2992480, *2 n. 2 (Fed. Cir. 2007) (per curiam) ("Even if the website material were considered, it is by no means clear that it would be sufficient to establish personal jurisdiction over [the defendant], . . . . where the evidence falls short of establishing that the particular products sold in [the state] were made by [the defendant]"); see also McZeal v. Fastmobile, Inc., 219 Fed. App'x 988, 988 (Fed. Cir. 2007) (affirming district court decision that it lacked personal jurisdiction over the defendant where the defendant's website was passive and other contacts with the state were insufficient to establish personal jurisdiction); Trintec Indus., Inc. v. Pedre Promottional Prod., Inc., 395 F.3d 1275, 1281 (Fed. Cir. 2005) (recognizing the difference in passive versus highly interactive websites in analyzing personal jurisdiction).

Other Courts of Appeals that have addressed the website issue have found that a website alone does not render personal jurisdiction. For example, in reviewing a case involving allegations of violations of the Lanham Act, the Court of Appeals for the First Circuit explained:

> To put the principle broadly, the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum. See, e.g., Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549-50 (7th Cir. 2004); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 713-15 (4th Cir.2002). Something more is necessary, such as interactive features which allow the successful online ordering of the defendant's products. See, e.g., Jennings, 383 F.3d at 549.

McBee v. Delica Co., Ltd., 417 F3d. 107, 124 (1st Cir. 2005). The Court of Appeals for the Third Circuit has similarly explained that the "likelihood that a state can exercise personal jurisdiction over a non-resident defendant website owner depends on 'the nature and quality of commercial activity that [the defendant] conducts over the Internet.'" Spuglio v. Cabaret Lounge, 344 Fed. App'x 724,

726 (3d Cir. 2009) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)); see also Best Van Lines, Inc. v. Walker, 290 F.3d 239, 251-52 (2d Cir. 2007).

Initially, the Court finds that the evidence before the Court indicates that, at the time this case was filed, Innovatech's website was passive. No evidence has been presented to indicate that the website was capable of completing sales. Thus, the website itself does not embody an intent to serve the Tennessee market in a way that would, standing alone, subject Innovatech to personal jurisdiction in Tennessee. However, the website can be counted as a factor weighing in favor of finding personal jurisdiction.

HTC and the Third-Party Defendants emphasize that the fact that Innovatech listed five sales managers on its website, one of whom was assigned to Tennessee, along with eleven other states and a Canadian territory. [See Doc. 57-1 at 2]. At the hearing, Innovatech responded that these sales managers were assigned states merely to field any calls that might be received from these state or territories and that the sales managers did not actively seek sales in the states. Again, though this assignment expresses a willingness to accept sales from Tennessee, it is not equivalent to advertising in the state or creating channels by which sales can be completed in the state. See Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. at 112. Further, there remains some dispute as to whether these salesperson assignments took place before or after this case was filed. HTC has presented no evidence that the salesperson had been assigned at the time of filing.

Turning to the issue of real property, HTC and the Third-Party Defendants argue that Innovatech owned a warehouse within this District. Innovatech responds that Roger Wiggins owned a residential property and adjacent lot in Maryville, Tennessee. Innovatech maintains that this property was never owned by Innovatech and was sold by Mr. and Mrs. Wiggins on October 5, 2005,

8

approximately two years before the filing of this suit. Innovatech has submitted Mr. Wiggins Affidavit and the Warranty Deeds and sales contract that evidence the purchase and sale of the property at issue. [Doc. 45-1]. HTC and the Third-Party Defendants direct the Court to a June 22, 2004, email from Mr. Wiggins, on behalf of Innovatech, to Gunn Thysell and Third-Party Defendant Hakan Thysell. [Doc. 43-1]. The email notes that the relationship between HTC and Innovatech is coming to an end and states that Innovatech still has parts and machines at its "Tennessee location," which it refers to as a warehouse.

It is largely undisputed that Innovatech never owned the property at issue. Nonetheless, the email correspondence between Mr. Wiggins and Mr. Thysell indicates that Mr. Wiggins was using the property in connection with Innovatech's business. These considerations appear to counteract one another, so that this factor only slightly supports a finding of minimum contacts. Further, what support it would lend is undermined by the fact that the Wigginses sold the property almost two years before this case was filed. The Court finds the fact that the Wigginses owned real property in Tennessee is entitled to little weight in the Court's analysis.

Finally, the HTC and the Third-Party Defendants allege that "by selling its product in Tennesseee, which . . . are among the infringing products Innovatech has sold, Innovatech's activities in Tennessee relate to HTC's patent infringement claims against it." [Doc. 57 at 4]. However, at the hearing held to address these issues, HTC had no evidence of any Innovatech products having ever been sold in Tennessee, let alone, an infringing product, and Innovatech maintained that no such sale has occurred. The Court finds that there is no evidence that Innovatech ever sold a product in Tennessee.

9

Case 3:07-cv-00232   Document 99   Filed 02/25/10   Page 9 of 12   PageID #: 1118

Based on the foregoing, the Court finds that the minimum contacts demonstrated by HTC are attenuated and the personal jurisdiction of this Court is questionable. However, all of this notwithstanding, the Court finds that Innovatech has indeed waived any objection it might have brought to this Court's jurisdiction.

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, a party waives the defense of lack of personal jurisdiction by omitting it from a motion made under Rule 12 or failing to include the defense in the parties responsive pleading. Fed. R. Civ. P. 12(h)(1), (b)(2), and (g)(2). In the Complaint, HTC alleges, "This Court has specific personal jurisdiction over Innovatech because, upon information and belief, it has committed tortious acts in the State of Tennessee and has personal property in the State of Tennessee." [Doc. 1 at 2]. Innovatech denied this allegation in its Answer [Doc. 10 at 2]. However, Innovatech never specifically invoked this defense despite invoking dozens of other defenses—including, *inter alia*, equitable estoppel, waiver, unclean hands, license, laches, and failure to state a claim upon which relief may be granted—in a two and a half page list of affirmative defenses. [Doc. 10 at 8-10]. Innovatech has not directed the Court to any case law, nor has the Court found any applicable case law, which would find Innovatech's simple denial of the personal jurisdiction statement contained in the Complaint to be a proper invocation of the defense of personal jurisdiction under Rule 12(b)(2). Accordingly, the Court finds that Innovatech waived the defense of lack of personal jurisdiction by failing to include the defense in its responsive pleading, [Doc. 10].

Beyond simply failing to invoke the defense of personal jurisdiction, Innovatech proactively engaged the jurisdiction of this Court. Innovatech brought a number of counter-claims and claims against third-parties, and while the Court is willing to assume, *arguendo* that the counter-claims may

10

Case 3:07-cv-00232   Document 99   Filed 02/25/10   Page 10 of 12   PageID #: 1119

have been compulsory, the claims brought against third-parties were not. Innovatech brought these claims in this District and forced the Third-Party Defendants to make an appearance in this District. These actions indicate a submission to the Court's jurisdiction to all other parties involved in this action, and any motion challenging this Court's jurisdiction is severely undermined by such actions.

In the end, the Court finds the time for Innovatech's objection to the personal jurisdiction of this Court long ago elapsed. The Motion for Change of Venue [Doc. 41] was brought almost two years after the Complaint in this case was filed, and the Motion for Change of Venue makes no mention of personal jurisdiction. It was not until Innovatech filed its Reply [Doc. 45] in defense of the Motion for Change of Venue that Innovatech actually raised the issue of personal jurisdiction. Simply put, "[i]n the absence of a motion to dismiss, a party's continued participation in litigation is inconsistent with an assertion of lack of personal jurisdiction." Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co., 203 F.3d 835 (10th Cir. 2000). The Court finds that, in addition to failing to properly invoke the defense of lack of personal jurisdiction, Innovatech's continued participation in this litigation "is inconsistent with an assertion of lack of personal jurisdiction." Id. These actions forfeit any defense based upon lack of personal jurisdiction.

In sum, the Court finds that Innovatech has waived and/or forfeited objection to this Court's jurisdiction over the Defendant's person. This Court has specific personal jurisdiction over Innovatech, as to the claims brought in the Complaint and all other claims arising out of the transactions now at issue.

## III. CONCLUSION

Based upon the foregoing, the Court finds that Innovatech's Supplemental Motion for Change of Venue (28 U.S.C. § 1404) or Alternative Motion to Dismiss for Lack of Personal

Jurisdiction (Fed. R. Civ. P. 12(b)(2)) **[Doc. 68]**, to the extent it prays for dismissal based upon a lack of personal jurisdiction, is not well-taken, and it is **RECOMMENDED**[4] that this prayer for relief be **DENIED**. The undersigned will address any objections to venue in a memorandum and order to be filed contemporaneously with this Report and Recommendation.

Respectfully Submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

12

Case 3:07-cv-00232   Document 99   Filed 02/25/10   Page 12 of 12   PageID #: 1121